570 P.2d 862

**M. G. ROUNDY and Marie Roundy, husband and wife, Plaintiffs and Appellants,**

**v.**

**Howard WANER and LaVerda Waner, husband and wife, Defendants and Respondents.**

**No. 11786.**

Supreme Court of Idaho.

Oct. 27, 1977.

.Preston G. Lutz, Boise, for plaintiffs and appellants.

John R. Rowe, Boise, for defendants and respondents.

BISTLINE, Justice.

The Roundys, plaintiffs-appellants in this suit, are the parents of Mrs. Waner who, with her husband, are the defendants-respondents. In 1964, the Roundys conveyed certain real property to the Waners by warranty deed. The deed was placed in the Waners' name in order to refinance the property after refinancing had been denied to the Roundys due to their advanced age.

There is no dispute that from 1964 to 1968, the Waners held the bare legal title to the property in trust for the Roundys who retained the equitable title and who expected the land to be reconveyed to them upon demand. It is also thoroughly established that there had been for many years, and continued until mid-1969, a very close relationship between Mrs. Waner and the Roundys. In 1969, however, the parties had a falling out and the Roundys demanded reconveyance of the property. The Waners refused and this litigation followed.

The Waners justify their refusal to reconvey on the grounds that they acquired full title to the property in July, 1968, when the Roundys orally agreed to relinquish the beneficial interest which had been created by the 1964 trust transaction. The Waners contend that Roundys asked them to purchase the property in 1968. Consideration for the purchase included the Waners' past kindnesses, their payment of the Roundys' indebtedness, their assumption of the out-

standing note and their promise to repair the property. The Waners assert that the Roundys insisted there was no need for any further written memorandum to conclude the matter inasmuch as the Waners were already personally obligated on the note for which the trust deed on the property was given as security and record title was already in Waners' name. The Roundys insisted that no such agreement had ever taken place and that the purported sale was invalid because it failed to comply with the Statute of Frauds,

> "9–503. No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

■ The trial court considered the claimed oral conveyance or surrender, fully mindful that the fiduciary relationship placed the burden of proof upon the Waners. After a painstaking review of the controverted evidence, the trial court found that "[t]he Roundys orally transferred the beneficial interest in the subject property in 1968." Accordingly, the trial court denied relief to the Roundys and quieted title in the Waners.

On this appeal, the Roundys urge that the trial court entertained the erroneous conception that the quantum of proof to be met by the Waners in establishing the oral sale was gauged by a "mere preponderance" rather than by a standard of "clear and convincing" evidence. The Roundys argue, in the alternative, that the Statute of Frauds requires a written memorandum whenever a beneficial interest in land is transferred and that therefore the 1968 transaction is invalid.

While it is true that the trial court did not specify in either his Memorandum Opinion or the Conclusions of Law that he was gauging the evidence by one standard or another, it is equally true that the Roundys never attempted to raise this point before the trial court. The thorough manner in which the trial court here approached the evidence convinces us that not only was he wholly conversant with the placing of the burden of proof, but also with the quantum of proof required. We find no merit in appellants' first assignment of error.

Regarding the Roundys' claim that an oral sale of a beneficial interest in land violates the Statute of Frauds, the trial court found, under these circumstances, a twofold exemption from the Statute's requirement of a writing:

> "The Statute of Frauds is not applicable to the creation or termination of resulting trusts, and furthermore, the performance of the terms of the alleged oral agreement has taken the agreement out of the operation of the Statute of Frauds."

■ We decline to rule on the trial court's first rationale, namely, that the relationship between the parties may here be properly characterized as a "resulting trust" and that because such trusts arise "by operation of law," both their creation and extinguishment is taken out of the requirements of the Statute of Frauds.[1] To deal with this theory would mire us down in the technicalities of trust law and is not necessary in view of the disposition which we make. We prefer to address the questions of equity more directly, as they are raised by the trial court's alternative rationale, namely, that partial performance takes a land sale out of the Statute of Frauds. I.C. § 9–504 specifically exempts such situations from the Statute's requirement of a writing:

---

1. I.C. § 9–504 states those situations which are taken out of the Statute of Frauds:

    "The preceding section must not be construed to affect the power of a testator in the

> disposition of his real property by a last will and testament, *nor to prevent any trust from* arising or *being extinguished by implication or operation of law* . . . ."

"The preceding section must not be construed . . . to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof."

In construing this language, we have traditionally relied upon California case law on the same topic. In *Chatterton v. Luker*, 66 Idaho 242, 158 P.2d 809 (1945), we quoted approvingly the following language:

" 'Of course the trial judge is clothed with wide discretion in according or withholding specific performance. This necessarily follows, as the judgment must depend upon the impression made by the particular circumstances of the case upon his sense of justice and equity.' " 66 Idaho at 256, 158 P.2d at 815, quoting from *McGinn v. Willey*, 24 Cal.App. 303, 141 P. 49, 52 (1914).

In the present case, the trial court considered the conflicting testimony of the parties and found:

"Sometime during the months of May to July, 1968, the Roundys orally agreed that the Waners could have the beneficial interest in the property in consideration of past favors rendered by the Waners and other additional considerations including assuming payment of the balance of the loan on the property; paying the Roundys $500 in cash; paying the balance of a loan that had been obtained for the Roundys' benefit from the Statesman Credit Union; and assuming all responsibility for making needed repairs on the property."

■ The testimony established that the "past favors" rendered by the Waners included a 30-year history in which Mrs. Waner had kept the books and handled the Roundys' money, using for that purpose a power of attorney she presented as their "authorized agent." Mrs. Waner testified that she frequently had occasion to pay the Roundys' bills out of the Waners' own funds. The Waners had, on other occasions, held title to real property in behalf of the Roundys when such a procedure was thought desirable by Roundy in his real estate transactions. Finally, Mrs. Waner

frequently cared for her mother, Mrs. Roundy, who has been disabled for many years. Various witnesses testified that Mr. Roundy was recurrently heard to say, "I could never repay you for as good as you've been to us." It is the law in Idaho that an oral contract for real property will be specifically enforced when based upon such considerations because, by their very nature, they are not susceptible to a dollar evaluation in any remedy for damages. *Jones v. Adams*, 67 Idaho 402, 182 P.2d 963 (1947).

As to actual dollars paid in consideration, the Waners state that the 1968 oral agreement called for them to assume liability for the outstanding note which at that time amounted to $14,447.73. Between 1968 and 1973, the Waners' payments on this note (both principal and interest) and on the property's taxes and insurance amounted to $7,870.44. In addition, the Waners had expended $500.00 toward the purchase of a car for Mr. Roundy in late 1967 when his own was no longer usable. Further, the Waners had taken out a loan in Mr. Roundy's behalf in late 1967 to prevent creditors from placing a lien on his property in order to collect on various medical bills. This loan was assumed by the Waners as partial consideration for the purchase of the property and they expended $2,455.00 in paying it off. Finally, Mr. Roundy was experiencing a cash shortage at the time of the sale and demanded $500.00 in cash, a demand which the Waners met by tendering $560.00 in checks.

■ The familiar maxim invoked in considering such factors is that a court of equity will not permit the Statute of Frauds itself to become an agent of fraud. A defendant who is induced to rely on an oral agreement and who changes position to his own detriment cannot be defrauded by a plaintiff who interposes the Statute of Frauds to declare the agreement invalid. In weighing the factors which constitute part performance and which therefore raise an equitable estoppel against any plaintiff who attempts to raise the Statute of Frauds, this Court has long held:

" 'The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined.' " *Barton v. Dunlap*, 8 Idaho 82, 92, 66 P. 832, 836 (1901), quoting from 3 Pomeroy's Equity Jurisprudence, section 1409.

In the present case, the Waners testified Roundy invited them to purchase the subject property at the time they (the Waners) sold their own home in the summer of 1968. The express motive was so that Mrs. Waner could be closer to her mother, Mrs. Roundy, who was permanently disabled and whom she was visiting and caring for on a daily basis. As part of the oral agreement, the Waners agreed to repair the property which was apparently in a rundown condition. The repairs which were undertaken as part of the agreement cost the Waners $2,344.00 for the materials alone, with Mr. Waner supplying the labor for all projects. The extensive repairs included painting, carpeting and rewiring; repair of the roof, eaves, doors, and appliances; digging a trench and installing a new cesspool to service both the Roundys' and Waners' properties; plus installation of a second bathroom.[2]

In evaluating the factors of part performance, the trial court must determine that the ways in which a party changes his position must be traceable to the alleged oral contract. Here Judge Durtschi was fully justified in reaching a conclusion that the Waners had indeed changed position in reliance upon what they understood to be an oral agreement to transfer the full title to them. Such part performance by the Waners justified the trial court's decision to quiet title in them. The record supports the trial court's determination. Accordingly, we affirm. Costs to respondents.

McFADDEN, C. J., and DONALDSON and SHEPARD, JJ., concur.

BAKES, J., sat but did not participate.

2. On the occasions when this Court has closely scrutinized "improvements" and other alleged items of "consideration" we have insisted that they be "substantial in relation to the value of the property" and not merely such as what "good husbandry would require" of a good

tenant. *Anderson v. Whipple*, 71 Idaho 112, 127, 227 P.2d 351 (1951). In the present case, this requirement has clearly been met. The property was sold by the Waners to a third party in 1973 for the sum of $22,500.00.